JOHN RHODES
Assistant Federal Defender
JESSICA WELTMAN
Research Attorney
Federal Defenders of Montana
Missoula Branch Office
P.O. Box 9380
Missoula, MT 59807
Phone: (406) 721-6749

Attorneys for Defendant David E. Burgert

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID BURGERT,<br><br>Defendant. | **Case No.'s**  CR 04-21-M-DWM<br>CR 02-49-M-DWM<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |
|---|---|

## I. INTRODUCTION

DAVID BURGERT comes before the Court for re-sentencing. Mr. Burgert was previously sentenced in two related cases. The two cases are docketed in this Court as No. CR-02-49-DWM and No. CR-04-21-DWM.[1] At the first sentencing hearing, the Court imposed two concurrent terms of 84 months imprisonment, followed by two concurrent terms of three years of supervised release. At the second sentencing hearing, the Court found that "an appropriate sentence in this case would

---

[1] In Mr. Burgert's cases, two Presentence Investigation Reports were prepared and have been revised. Where it has been necessary to differentiate, citations to PSR-I refer to the report prepared for Docket No. CR 02-49-M-DWM. Citations to PSR-II refer to the report prepared for Docket No. CR 04-21-DWM.

1

be a combination of these two sentences that end up at the statutory maximum" of 120 months; in other words, between the two cases, the Court sought to impose 120 months of imprisonment. Thus, based on the time Mr. Burgert already had served, at the second sentencing, the Court ordered him imprisoned for a total term of 87 months with 51 months served concurrent to the remainder of his undischarged sentence in the first case, and 36 months served consecutive to the undischarged term pursuant to U.S.S.G. § 5G1.3(c).

Mr. Burgert's first sentence was vacated and remanded by the Ninth Circuit on November 15, 2004.  See *United States v. Burgert*, 2004 WL 2580922 (9th Cir. Nov.15, 2004) (affirming judgment of conviction but vacating and remanding for resentencing in light of *Blakely* and for reconsideration of the issue regarding the two level enhancement for reckless endangerment (U.S.S.G. § 3C1.2) where the allegedly endangered person ultimately became a co-defendant). The second sentence was remanded by the Ninth Circuit on April 5, 2006.  See *United States v. Burgert*, 2006 WL 985301 (9th Cir. April 5, 2006) (remanding pursuant to *United States v. Ameline*, 409 F.3d 1073, 1084-85 (9th Cir. 2005)(en banc)).

In the first case, Mr. Burgert plead guilty to Possession of a Machine Gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On each count, he faces up to ten years imprisonment and a fine of up to $250,000.

In the second case, Mr. Burgert plead guilty to Conspiracy to Possess Illegal Firearms in violation of 18 U.S.C. §§ 371 and 922(o), Possession of a Machine Gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) and Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On each count, he faces up to ten years imprisonment and a fine of up to $250,000.

In each case, the United States Probation Officer has calculated a Guideline range of 70-87 months (Total Offense Level 23; Criminal History Category IV).  As noted in the Addendum to both

PSRs, had Mr. Burgert been prosecuted simultaneously for the offenses in both cases, all counts would have been grouped pursuant to U.S.S.G. § 3D1.2(b) and (d). The total offense level would be 27 and the criminal history category IV would have resulted in a Guidelines range of 100-125 months, rather than two ranges of 70-87 months. See Addendum to PSR, Objection and Response No. 2.

Mr. Burgert requests a sentence of time-served. According to the PSRs, he has been detained and incarcerated since December 16, 2002. Alternatively, he requests a sentence that at least reduces his previous aggregate sentence of 120 months by two Guidelines levels to 100 months total imprisonment. Such a reduction would reflect that his first sentence mistakenly incorporated an enhancement for "recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." *See* U.S.S.G. § 3C1.2 (2003) (defining "another person" as anyone "except a participant in the offense who willingly participated in the flight."). *United States v. Burgert,* 116 Fed. Appx. 124, 126 (9th Cir. 2004). In remanding Mr. Burgert's case, the Ninth Circuit observed:

> At oral argument, the government informed us of new, pending conspiracy charge against both Burgert and Tracy Brockaway, as codefendants. Brockaway was the passenger in Burgert's car whom he allegedly endangered during his flight. The facts surrounding this new charge may shed additional light on whether Brockaway was "another person," as defined in § 3C1.2. In light of the new charge and the potential *Blakely* issue, we vacate Burgert's sentence and remand for resentencing.

*Id.*

Because Tracy Brockaway does not fit the definition of "another person," based on misapplication of U.S.S.G. § 3C1.2 at his first sentencing and Mr. Burgert's mental health and his model behavior while incarcerated, should the Court not impose a time-served sentence he requests an intermediary sentence between time-served and 100 months.

3

## II.  ARGUMENT

A.   Objection to Factual Assertions in the PSR

Mr. Burgert maintains the factual objections highlighted in his objection letter to the United States Probation Officer and documented in the Addendum to the PSR.  Specifically,

> Mr. Burgert's primary objection relates to the information about his mental and emotional health at P. 32, ¶¶ 97-100. Specifically, Mr. Burgert reports that the Federal Medical Center Rochester Evaluation in April of 2004 indicates on page 1 in the history of present illness heading that "a later mental health evaluation indicated that the patient's current presentation did not appear to be consistent with that of individuals who are diagnosed with Paranoid Personality Disorder." On page 4, the report states that "[h]e did not display any paranoia but rather a heightened sense of fear that someone would assault him." On page 5 on Axis I, he received a provisional diagnosis of post traumatic stress disorder, chronic, severe, with psychotic features (dissociation); major depressive disorder, recurrent moderate; alcohol dependence, in sustained full remission, in a controlled environment, and on Axis II, antisocial personality disorder.  Thus, Mr. Burgert objects to diagnosis of paranoia; rather he suffers from PTSD and depression.
>
> Mr. Burgert also objects to the fact of two indictments for the same offense.  The PSR does not score the charges of felon in possession of a machine gun in paragraph 68 as the charges in the instant offense arose out of the same circumstances.

| | |
|---|---|
| P. 6, Paragraph 10: | Mr. Burgert reports that he is not anti-government or anti-law enforcement and has never had any thought about kidnaping or harming anyone. |
| P.6, Paragraph 11: | Mr. Burgert denies the allegations in paragraph 11. |
| P.6, Paragraph 13: | Mr. Burgert reports that the charge of Obstruction and related charges were dropped. |
| P. 7, Paragraph 16: | Mr. Burgert reports that Tracy and Alan Brockway gathered the notes and information discovered on their own. |
| P.8, Paragraph 19: | Mr. Burgert denies any attempt to escape from jail. |

4

| | |
|---|---|
| P. 11, Paragraph 29: | Mr. Burgert denies concealing anything underground. |
| P. 12, Paragraph 32: | Mr. Burgert denies owning fragmentation grenades. |

Mr. Burgert reports a general objection as to the truth of the allegations contained in the representation of "other criminal conduct," paragraphs 70-86. Specifically:

| | |
|---|---|
| P.23, Paragraph 70: | Mr. Burgert reports that he was never convicted of these charges. The PSR states that the disposition was "Nolle," not prosecuted. Such information is irrelevant and can be used to Mr. Burgert's detriment by the BOP in their classification of him. |
| P.24, Paragraph 71: | Mr. Burgert reports that the statements alleged are not true and requests the removal of the paragraph because, as noted in the PSR, charges were never filed. |
| P.24, Paragraph 72: | Mr. Burgert reports that the statements alleged are not true and requests the removal of the paragraph because, as noted in the PSR, the allegations were recanted. |
| P.25, Paragraph 73: | Mr. Burgert reports that the statements alleged are not true and requests the removal of the paragraph because, as noted in the PSR, the allegations were not adjudicated. |
| P.25, Paragraph 74: | Mr. Burgert reports that the statements alleged are not true and requests the removal of the paragraph because, as noted in the PSR, charges were dismissed. |
| P.25, Paragraph 75: | Mr. Burgert reports that the statements alleged are not true and requests the removal of the paragraph. |
| P.25-27, Paragraph 76- 81: | Mr. Burgert reports that the statements |

5

|  |  |
|---|---|
|  | alleged are not true and requests the removal of the paragraph because charges were never filed. |
| P.27-29; Paragraphs 82-86: | Mr. Burgert reports that the statements alleged are not true and requests the removal of the paragraph. |
| P. 31; Paragraph 93: | Mr. Burgert reports that the brace had been taken from him. |
| P.33, Paragraph 101: | Mr. Burgert reports that his mother never indicated that he was clinically paranoid. |

B.  Dispute With Calculation of Guideline Sentencing Range

Mr. Burgert disagrees with the PSR Guidelines calculations because he maintains that all offenses arose out of the same circumstances and that both indictments are from the same offense. Thus, had he been prosecuted simultaneously, all counts would have been grouped pursuant to U.S.S.G. § 3D1.2(b) and (d). U.S.S.G. § 3D1.2 requires the district court to group closely-related counts into a single "combined" offense level. Closely-related counts are those "involving substantially the same harm." *United States v. Barron-Rivera*, 922 F.2d 549, 554 (9th Cir. 1991). Firearm offenses for which the base offense level is provided by section § 2K2.1 are "of a character for which § 3D1.2(d) would require grouping of multiple counts." *See* U.S.S.G. § 1B1.3(a)(2); U.S.S.G. § 3D1.2(d) (stating that "[o]ffenses covered by" section 2K2.1 "are to be grouped under this subsection"). All of the counts here would be grouped because they are "two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan" and because the offense conduct is continuous in nature. §3D1.2 ((b) and (d)). Application Note 4 explains that "[w]hen one count charges a conspiracy or solicitation and the other charges the substantive offense that was the sole object of the conspiracy," the counts will be grouped. Grouping the counts here would yield a total offense level of 27. The offense level of 27 and a criminal history category IV would have resulted in a Guidelines range of 100-125 months, rather

than two sentences of 70-87 months.

In addition, pursuant to the Guidelines, U.S.S.G. § 4A1.2(a)(2), "[P]rior sentences imposed in related cases are to be treated as one sentence for purposes of 4A1.1(a), (b), and (c)." The Ninth Circuit considers several factors to determine whether prior offenses were part of a "common scheme or plan" for U.S.S.G. § 4A1.2(a) purposes: (1) whether the crimes were committed within a short period of time; (2) whether the crimes involved the same victim; (3) whether the defendant was arrested by the same law enforcement agency for both crimes; and (4) when the arrests occurred and whether both crimes were solved during the course of one investigation. *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992). *See also* Note 3 to U.S.S.G. § 4A1.2 (prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for the trial or sentencing.") The court also examines the similarities in the offenses. *Id*. The same offense conduct is described in the two separate PSRs, both describing the events of February 7, 2002 into the morning of February 8, 2002 in which Mr. Burgert was in possession of an automatic weapon. (PSRs ¶ 14.) The same law enforcement agencies investigated and arrested Mr. Burgert for both cases. Thus, the prior offenses were part of a common scheme or plan for criminal history purposes. In sum, both the offense level and criminal history sections classify Mr. Burgert's two cases as a single case for Guidelines purposes, therefore he should be sentenced accordingly.

C.     Downward Departure

"A sentence below the applicable guideline range may be warranted if the defendant committed, the offense while suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13. Diminished capacity is an encouraged grounds for departure. In order to qualify for a departure under this section a defendant must be suffering from something greater than emotional problems, or hardship. The Ninth Circuit has stated that "plain language of § 5K2.13 permitting

7

departures, 'to reflect the extent to which reduced mental capacity contributed to the commission of the offense,' makes clear that the defendant's diminished capacity need be only a contributing factor" and that "once some nexus is shown, to any degree, the district court may depart downwardly to reflect the extent of that contribution." *United States v. Cantu*, 12 F. 3d 1506, 1515 (9th Cir. 1993) (remanding for the district court to consider whether a lesser period of incarceration was appropriate after recognizing that post traumatic stress disorder may constitute significantly reduced mental capacity for the purposes of § 5K2.13). Also, in *Cantu*, the Ninth Circuit held that § 5K2.13 "applied to both mental defects and emotional disorders . . . ." *Id.*

Mr. Burgert has a long history of mental health issues and has received several mental health evaluations. Most recently, on May, 3, 2004, he received an evaluation from Suzanne Carroll, M.D. at the Federal Medical Center, Rochester.[2] That evaluation indicates on page 1 in the history of present illness heading that "a later mental health evaluation indicated that "[h]e did not display any paranoia but rather a heightened sense of fear that someone would assault him." On page 5, Axis I., Mr. Burgert received a provisional diagnosis of post traumatic stress disorder, chronic, severe, with psychotic features (dissociation); major depressive disorder, recurrent moderate; alcohol dependence, in sustained full remission, in a controlled environment and on Axis II antisocial personality disorder. Mr. Burgert's heightened sense of fear, now continuing to manifest itself in prison, helps explain why Mr. Burgert responded in such a fearful manner in the process of committing his crimes. Like in *Cantu*, these facts, and those detailed infra, justify a downward departure based upon diminished capacity or a statutory variance because application of the § 3553(a) sentencing factors warrants a lower sentence. See *Rita v. United States*, --S.Ct.–, 2007 WL 1772146, *9 (June 21, 2007).

---

[2] Medical records have been filed under seal.

D.   18 U.S.C. § 3553(a) Sentencing Factors

*United States v. Booker* establishes an independent limit on the sentence that may be imposed. The primary sentencing mandate of 18 U.S.C. § 3553(a) states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment - justice, deterrence, incapacitation, and rehabilitation:

> The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

18 U.S.C. § 3553(a) (emphasis added). This so-called "parsimony provision" is not simply a factor to be considered in determining a sentence; it represents a cap above which the Court is statutorily prohibited from sentencing – even when a greater sentence is recommended by the Sentencing Guidelines, which, per § 3553(a), are statutorily subordinate to the parsimony principle. See *United States v. Foreman,* 436 F.3d 638, 644 n.1 (6th Cir. 2006); *United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).

After calculating the proper Guidelines sentence and formally ruling on motions regarding departures and the manner any such departure would affect the Guidelines calculation, the court must exercise its discretion in making a final sentencing determination. *United States v. Gunter*, 462 F.3d 237, 247 (3rd Cir. 2006) (holding that the district court erred under *Booker* in treating the crack/powder cocaine sentencing differential incorporated in the Guidelines as mandatory in imposing a final sentence). Specifically, the court must consider the § 3553(a) factors in sentencing the defendant "regardless whether it varies from the sentence calculated under the Guidelines." *Id*. There is no presumption at the district court that the Guidelines sentence should apply. *Rita*, *9.

The Court should use its discretion after *Booker* and *Rita* to consider Mr. Burgert's history of post traumatic stress disorder and other mental illness. This history should be considered in conjunction with the important fact that Mr. Burgert has been incarcerated without incident since his original incarceration in on December 16, 2002. See PSR.

Mental health is an encouraged factor for a court to consider in sentencing because it promotes the policy of lenity toward defendants whose ability to make reasoned decisions is impaired." *United States v. Cantu*, 12 F.3d 1506, 1512 (9th Cir.1993). As such, a district court may depart downward to "reflect the extent to which the reduced mental capacity contributed to the commission of the offense." U.S.S.G. § 5K2.13. The Ninth Circuit explained that the courts should "find some degree, not a particular degree, of causation" between the defendant's mental condition and the commission of the offense in question. *Cantu*, 12 F.3d at 1515. Here, the BOP report establishes that Mr. Burgert's mental condition (to some degree) caused him to commit his offense.

Mr. Burgert's history of mental illness reaches back into his childhood. Both Mr. Burgert and his mother reported that, as a child, he was physically abused and witnessed abuse of his mother by his alcoholic father. (PSR-II ¶ 88). According to a recently published, long-term study examining the risk of depression in people who were abused or neglected as children, researchers found that overall, childhood physical abuse increased the lifetime risk for depression and that previously abused individuals were more likely to meet the diagnostic criteria for at least one other mental disorder, such as post-traumatic stress disorder, drug dependence, or antisocial personality disorder.[3]

Depression in men typically manifests itself as discouragement, frustration, irritability, anger and sometimes, as violence, and is often masked as alcohol or drug abuse.[4] Some men respond to depression by engaging in reckless behavior, taking risks and putting themselves in harm's way.[5]

---

[3] C. Spatz Windom, K. Dumont & S.J. Czaja, *A Prospective Investigation of major Depressive Disorder and Comorbidity in Abused and Neglected Children Grown Up*, 64(1) Arch. Gen. Psych. 49-56 (2007).

[4] National Institute of Mental Health, *Men and Depression*, Pub. No. 05-4972, 8 (2005).

[5] *Id.*

Depression is especially prevalent among people with post traumatic stress disorder.[6] Post traumatic stress disorder (PTSD) is an anxiety disorder. Anxiety disorder symptoms cluster around excessive, irrational fear and dread.[7] PTSD can develop after exposure to a disturbing or frightening event that involves physical harm or the threat of physical harm.[8] It can result from a variety of traumatic incidents, including being held captive, torture or childhood abuse.[9] Most people with post traumatic stress disorder repeatedly relive the trauma in their thoughts during the day and in nightmares when they sleep.[10] They may feel angry, startle easily, always be on the lookout for danger, and be unable to trust other people.[11] PTSD may manifest itself as aggression or violence.[12] In general, anxiety and major depressive disorders are treated with medications, specific types of psychotherapy, or both.[13]

As noted previously, in her evaluation of Mr. Burgert, Dr. Suzanne Carroll, MD, has given him a provisional diagnosis (Axis I) of post traumatic stress disorder, chronic, severe with psychotic features; major depressive disorder, recurrent moderate; alcohol dependence, in sustained full remission, in a controlled environment and (Axis II) antisocial personality disorder and has indicated that Mr. Burgert has a heightened sense of fear. In her report, Dr. Carroll noted that in an earlier examination done after Mr. Burgert's arrival at the Federal Detention Center in SeaTac, Washington,

---

[6] *Id.* at 6.

[7] National Institute of Mental Health, *Anxiety Disorders*, Pub. No. 06-3879, 2 (2006).

[8] National Institute of Mental Health, *Post Traumatic Stress Disorder, A Real Illness*, Pub. No. 05-4675, 4 (2005).

[9] *Anxiety Disorders*, at 7.

[10] *Id.* at 8.

[11] *Post Traumatic Stress Disorder, A Real Illness,* at 4.

[12] *Anxiety Disorders*, at 7.

[13] *Id.* at 14.

a forensic psychologist found him to be delusional and depressed. Records from the Bureau of Prisons in 2007 reflect that Mr. Burgert is rated as a Care Level 2 inmate with medical duty status of Mentally Ill. In addition, Mr. Burgert has several physical health problems, including hypertension, degenerative disease of the vertebra and severe, chronic back pain. (PSR-II ¶ 92-3).

Mr. Burgert has a long history of untreated mental health issues. Although he was honorably discharged from the Marine Corps as an 18 year-old, his record reflects that he was counseled for behavior and disciplinary problems. (PSR-II ¶ 110). Mr. Burgert began abusing alcohol at a young age. (PSR-II ¶ 102). Family members expressed concern about his mental health (PSR-II ¶ 98), yet according to Dr. Carroll's evaluation, Mr. Burgert received no inpatient or outpatient mental health services and, until he received medications while incarcerated, he had never been on psychiatric medications (p. 7).

On November 27, 2001, during an incident involving the Kalispell Police Department, Mr. Burgert was pepper-sprayed. (PSR-II ¶ 98). While being booked, a bag was placed over Mr. Burgert's head because he was spitting on officers. (*Id.*) That incident traumatized Mr. Burgert, who later told a Bureau of Prisons' evaluator, "I will never regain the dignity that they took." (*Id.*) At the time of his offense conduct, in his untreated, delusional mental state, Mr. Burgert believed that he was mistreated and tortured by law enforcement and that his life was in danger. (PSR-II ¶ 99). The chain of events which led to the instant offenses and ultimately ended in a standoff with law enforcement were, in part, the result of Mr. Burgert's untreated mental conditions.

According to PSR-I, Mr. Burgert has been incarcerated and detained since December 16, 2002. The time that Mr. Burgert has already served reflects the seriousness of his offenses, especially in light of the fact that no person was actually harmed by his crimes. Mr. Burgert has been provided with the medications and psychological services that he needs and, since his arrival at Talladega FCI, he has maintained effectively. (PSR-II ¶ 97). Further incarceration is not required

to continue this treatment because psychological services and access to medications are available in most Montana communities through regional outpatient mental health centers.[14] Mr. Burgert has demonstrated his ability to commit to a long-term treatment program through his participation in Alcoholic's Anonymous, resulting in more than a decade of sobriety. (PSR-II ¶ 102). Protection of the public has been accomplished by providing Mr. Burgert with the medications and psychological services he required to address the mental health problems that contributed to his criminal conduct. The years Mr. Burgert has been incarcerated are sufficient to deter him from future criminal conduct and to warn others of the consequences of similar conduct. In addition, Mr. Burgert's back problems have incapacitated him. He is in chronic pain and is unable to travel. (PSR-II ¶ 92).

Given Mr. Burgert's personal history, a sentence of time served is appropriate and achieves the statutory purposes of sentencing. 18 U.S.C. 3553(a)(2).

E.   Restitution

Restitution is not at issue here.

F.   Witnesses

Mr. Burgert does not intend to call sentencing witnesses.

G.   Recommended Sentence

Mr. Burgert requests a sentence of time-served. Alternatively, he requests a sentence that, at least reduces his previous aggregate sentence of 120 months by two Guidelines levels to 100 months total imprisonment to reflect that his first sentence mistakenly incorporated an enhancement for "recklessly creating a substantial risk of death or serious bodily injury to another person in the

---

[14] United States Dept. Of Health and Human Services Substance Abuse and Mental Health Administration, National Mental Health Information Center: Montana Listings, http://mentalhealth.samhsa.gov/databases/facility-search.aspx?state=MT&fullname=Montana (July 06, 2007).

course of fleeing from a law enforcement officer.  *See* U.S.S.G. § 3C1.2 (2003) (defining "another person" as anyone "except a participant in the offense who willingly participated in the flight."); *United States v. Burgert,* 116 Fed. Appx. 124, 126 (9th Cir. 2004).  Should the court deem continued incarceration to be appropriate, Mr. Burgert requests a sentence of less than 100 months.

DATED this 13th day of July, 2007.

> DAVID E. BURGERT
>
> By:  */s/ John Rhodes*
> JOHN RHODES
> Assistant Federal Defender
> Federal Defenders of Montana
> P.O. Box 9380
> Missoula, MT 59807-9380
> Counsel for Defendant

CERTIFICATE OF SERVICE
L.R. 5.2(b)

I hereby certify that on July 13, 2007, a copy of the foregoing document was served on the following persons by the following means:

1, 2     CM-ECF

\_\_\_\_     Hand Delivery

4     Mail

\_\_\_\_     Overnight Delivery Service

\_\_\_\_     Fax

3     E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. KRIS McLEAN
   Assistant U.S. Attorney
   P.O. Box 8329
   Missoula, MT 59807
       Counsel for the United States

3. JEAN KEILEY
   U.S. Probation Office
   P.O. Box 7675
   Missoula, MT 59807
       United States Probation Officer

4. DAVID E. BURGERT, JR.
   USM # 07636-046
   FCI Talladega
   Federal Correctional Institution
   P.O. Box 1000
   Talladega, AL 35160
       Defendant

By: */s/ John Rhodes*
    JOHN RHODES
    Assistant Federal Defender
    Federal Defenders of Montana
    P.O. Box 9380
    Missoula, MT 59807-9380
        Counsel for Defendant